CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ANDREW PAULSON (CABN 267095)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    andrew.paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT BELL JR.,<br><br>    Defendant. | CASE NO. 4:24-cr-00279-HSG<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: July 30, 2025<br>Time: 2:00 p.m.<br>Judge: Hon. Haywood S. Gilliam, Jr. |

## I. INTRODUCTION

In May 2023, Robert Bell Jr. robbed two U.S. Postal Service mail carriers of their postal keys. He then used those keys to steal mail from community mailboxes and collection boxes that he later used in various fraud and identity theft schemes. In July 2023, U.S. Postal Inspectors executed search warrants on Bell's house and vehicle, where they found postal keys and a multitude of stolen mail, counterfeit checks, and other materials Bell used in his schemes. They also located a gun in the glove box of his car. Bell subsequently pleaded guilty to two counts of robbery of a mail carrier and aiding and abetting in violation of 18 U.S.C. §§ 2114(a), 2; and one count of possession of stolen mail keys in violation of 18 U.S.C. § 1704. On July 30, 2025, Bell is scheduled to be sentenced following his successful completion of the Leading Emerging Adults to Develop Success (LEADS) program. Based on Bell's completion of

the LEADS program and the reasons set forth herein, the government recommends a sentence of time served, three years' supervised release, and a $300 special assessment.

## II. OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION

### A. The May 4, 2023, Robbery of a Letter Carrier in Antioch

On May 4, 2023, Bell was driving a car near Chickie Street in Antioch, California with Individual 1 in the passenger seat. Bell and Individual 1 were driving around looking for a U.S. Postal Service mail carrier so that they could rob him of the postal keys. These types of keys are referred to as "arrow keys," and they unlock certain community mailboxes and collection boxes. Bell wanted these arrow keys so that he could access community mailboxes and collection boxes where he could steal mail and use the mail to engage in fraud, identity theft, and other similar offenses.

At approximately 3:30 p.m., Bell and Individual 1 spotted a mail carrier on Chickie Street. Individual 1 exited the car Bell was driving and approached the mail carrier. As the mail carrier was walking back to his mail truck after dropping a parcel off at a residence, Individual 1 approached him and demanded the mail carrier's arrow key. At the time, Individual 1 had his hands inside the pockets of his hooded sweatshirt and told the mail carrier, "Give me the arrow key or else." The carrier said, "Or what?" Individual 1 replied, "Come on, I don't want to do this. You're a cool guy, just give me the key." The carrier removed the arrow key from his key ring, gave it to Individual 1, and then Individual 1 walked away and into the car Bell was driving. Once Individual 1 entered the car, Bell drove away from the scene of the robbery. Approximately five minutes after the robbery, Bell took photos of Individual 1 and a key they had stolen.

 

**B. May 17, 2023, Robbery of a Letter Carrier in San Francisco**

At approximately 1:20 p.m. on May 17, 2023, Bell was driving a car near the intersection of Carrizal Street & Parque Drive in San Francisco with Individual 2 in the passenger seat. Bell was once again driving around looking for a U.S. Postal Service mail carrier so that he and Individual 2 could rob him of the arrow keys he was carrying. As they drove around, Bell saw that Individual 2 had a gun with him in the car. After locating a mail carrier, Bell stopped the vehicle and he and Individual 2 got out of the car and approached the mail carrier, who was tending to the mail in the rear of his mail vehicle. Bell then demanded that the mail carrier give them his arrow keys. At the same time Bell made this demand, Individual 2 brandished a gun that he had in his waistband. The mail carrier put his hands in the air and then gave Bell a key ring that included various U.S. Postal Service keys, including arrow keys. Bell and Individual 2 then got back in the car and fled the scene. When Bell dropped Individual 2 off at a different location than the robbery, Bell gave him some checks he had previously stolen using the arrow keys he had taken from the mail carrier during the May 4, 2023. Bell gave these stolen checks to Individual 2 as compensation for him assisting with the robbery.

**C. Bell's Possession of Stolen Mail Keys on July 18, 2023**

On July 18, 2023, U.S. Postal Inspectors executed search warrants at Bell's residence and on his car. In his bedroom, Inspectors found five genuine U.S. Postal Service keys, including the arrow keys he had taken during the May 4 and May 17 robberies. They also found copious amounts of checks, counterfeit checks, check stock, stolen mail, blank credit cards, and ATM receipts from financial institutions. In total, Inspectors located approximately 642 items containing stolen/counterfeit checks, stolen mail, credit cards, IDs, and other items in Bell's bedroom. Postal Inspectors also found a fraudulent U.S. Postal Service identification card with Bell's photo on it and the name "Raheem A. Henley" with the title "Collection Box Officer." In the glove compartment of Bell's car, Inspectors found a loaded, stolen Taurus, model G3, 9mm pistol sitting on top of a stack of more than 30 stolen checks.

**D. The Government Objects to the Calculation of the Offense Level in the PSR**

Pursuant to the terms of the plea agreement, the government objects to the PSR's five-level enhancement under U.S.S.G. § 2B3.1(b)(2)(C) for the brandishing of a firearm, as well as the two-level

enhancement under § 2B1.1(b)(2)(A) for more than 10 victims.[1] The government requests that the Court adopt the guidelines calculation from the Plea Agreement, which is set forth below.

| **Count 1: Aiding and Abetting Robbery of Mail Carrier (18 U.S.C. §§ 2, 2114(a))** <br> **Count 2: Robbery of a Mail Carrier (18 U.S.C. § 2114(a))** <br> **Count 3: Possession of Stolen Mail Keys (18 U.S.C. § 1704)** | | |
|---|---|---|
| | **U.S.S.G. Section** | **Level/Points** |
| Group 1 – Aiding and Abetting Robbery of a Mail Carrier | | |
| Base offense level – Count 1 | § 2B3.1 | 20 |
| Specific Offense Characteristic: <br> - Property of post office taken | § 2B3.1(b)(1) | +2 |
| Adjusted offense level – Group 1 | | 22 |
| Group 2 – Robbery of a Mail Carrier | | |
| Base offense level – Count 2 | § 2B3.1 | 20 |
| Specific Offense Characteristic: <br> - Property of post office taken | § 2B3.1(b)(1) | +2 |
| Adjusted offense level – Group 2 | | 22 |
| Group 3 – Possession of Stolen Mail Keys | | |
| Base offense level – Count 3 | § 2B1.1 | 6 |
| Adjusted offense level – Group 3 | | 6 |
| Grouping | | |
| Multiple counts | § 3D1.4(a) | +2 |
| Adjusted offense level | | 24 |
| Acceptance of responsibility | § 3E1.1 | -3 |
| Total offense level | | 21 |

The government agrees with the PSR's calculation of Bell's Criminal History Category (CHC). With a total of criminal history score of zero, Bell has a CHC of I. PSR ¶ 49. Applying the guidelines from the Plea Agreement, the advisory Guidelines range here is 37-46 months. If the Court adopted the PSR's total offense level of 25, the advisory Guidelines range would be 57-71 months. PSR ¶ 72.

## III.   SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The

---

[1] The government acknowledges that these enhancements are appropriate under the Guidelines.

overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. The Government's Recommended Sentence

As the PSR notes, Bell has successfully completed the LEADS program. He has "maintained sobriety, participated in all required programming, maintained employment, furthered his education, and obtained a barber's license" while on pretrial release. PSR ¶ 95. The government congratulates Bell on his success in the program and encourages him to continue doing the hard work that will be required to maintain his current positive trajectory. Based on Bell's successful completion of the LEADS program, and pursuant to the plea agreement in this case, the government recommends that the Court sentence him to time served.

## IV. CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence Bell to time served, three years' supervised release, and a $300 special assessment.

DATED: July 23, 2025                                       Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


*/s/ Andrew Paulson*
ANDREW PAULSON
Assistant United States Attorney